## In re MAH WONG GEE et al.

### (District Court, D. Vermont. September 7, 1891.)

1. EXCLUSION OF CHINESE—RATIFICATION OF TREATY.

   Act Cong. Sept. 13, 1888, § 1, provides that, "from and after the date of the exchange of ratifications of the pending treaty between the United States and his imperial majesty the emperor of China, * * * it shall be unlawful for any Chinese person * * * to enter the United States, except as hereinafter provided." Section 13 provides that any Chinese person convicted before a commissioner of being unlawfully in the United States may, within 10 days, appeal to the judge of the district court. Held, that section 13 did not depend upon the ratification of the treaty, but became effective from the date of the approval of the act.

2. SAME—DEPORTATION.

   Where a Chinese person has been convicted of being unlawfully in the United States, and the evidence shows that he entered the United States from Canada, after having been in that country for a time, he must be returned to Canada, under the act which provides that such person shall be removed to "the country whence he came."

3. SAME.

   Where a Chinese person is found in the United States and is arrested, but not on view of his entry into this country, he cannot be removed, unless it is shown that he is unlawfully in this country.

At Law.

J. J. Enright and Henry Ballard, for appellants.
Frank Plumley, Dist. Atty., for the United States.

WHEELER, J. These matters have come by appeal from a commissioner ordering the return of the appellants, by the names of Quing

Bock and Tai Wing, to China. Question is made whether any appeal is provided for, because the treaty mentioned in the act of September 13, 1888,[1] (25 St. 476,) has not been ratified. Parts of the act were made to take effect on the ratification of the treaty; and the rest, including section 13, providing for an appeal, were made to take effect presently, and became at once, and are now, a part of the law of the subject. No question is now made but that these persons are unlawfully in this country, and subject to be expelled in this proceeding; but one is made as to where they shall be sent. This section of that act provides that such person shall be removed to "the country whence he came." In the appropriation acts of 1890 and 1891 are provisions for "enforcement of the Chinese exclusion act," including "expenses of returning to China all Chinese persons found to be unlawfully within the United States." This is argued to amount to an enactment that all such persons are to be sent to China. The effect of the legislation upon this subject seems to be to exclude from, and keep from return to, this country all persons of that race, whether they come from China or any other country. The expense of returning those from a contiguous country would be borne from the ordinary appropriations for marshals' and commissioners' fees and other judicial expenses; while the expenses of returning those from China to that country, a long distance beyond the jurisdiction of such officers, would not; from hence the necessity for this special appropriation would seem to have come. It provides only for returning to China all Chinese persons, etc.; none could be returned to China who did not come from there, and this provision would not be applicable to those who came from elsewhere. This clause would seem, therefore, by its terms, to refer to only Chinese persons coming from China, and to leave the general provisions for the return of such persons to the country whence they came unaffected. These persons came from St. Armand, in Canada. They now have certificates issued by the government of that country at Vancouver purporting to give them the right to return to that country free. The government here claims that these certificates have been furnished to them by others of their race since they came here, and do not belong to them. How this is does not seem to be now material. The effect of the certificates, if theirs, is only to take their history back from St. Armand to Vancouver, in the same country. They do not at all show when or how they came into that country. Nothing shows or tends to show this except the testimony of a witness that one nodded assent when asked if they came from China. This one seems to understand English imperfectly, and the other but very little. If they came directly from China by continuous journey through another country they might be said to come from China. The assent to the inquiry, if understood, might show that the one assenting at some time came

---

[1] Act Cong. Sept. 13, 1888, § 1, provides that, "from and after the date of the exchange of ratifications of the pending treaty between the United States and his imperial majesty the emperor of China, * * * it shall be unlawful for any Chinese person * * * to enter the United States, except as hereinafter provided." Section 13 provides that any Chinese person convicted before a commissioner of being unlawfully in the United States may, within 10 days, appeal to the judge of the district court.

from China; and perhaps that the other did, if he also understood, and did not dissent from the assent; but it falls far short of proof that they or either of them came immediately from China. So far as evidence goes, the country from whence they now came is Canada. The government insists that the burden of proof is on them to show whence they came if not from China. Many cases have arisen upon the question of the right of Chinese persons to enter this country from without in which they have been required to show the right; but the question of permitting them to come into this country when out of it is very different in this respect from that of putting them out when found here. *Quock Ting* v. *U. S.*, 140 U. S. 417, 11 Sup. Ct. Rep. 733, 851. By the constitution of the United States no person within its reach is to be deprived of life, liberty, or property without due process of law. Amendment 5. This process may be due process of law for turning back whence he came an alien not allowed here. *Chinese Exclusion Case*, 130 U. S. 581, 9 Sup. Ct. Rep. 623. It would not seem to be due process of law for punishing an alien coming here from one country by banishment from this to another country. A proceeding for that purpose would seem to be a criminal prosecution, in which the constitution provides that "the accused shall enjoy the right to a speedy public trial by an impartial jury of the state and district wherein the crime shall have been committed." Amendment 6. These men were found within the United States, not at the boundaries, and arrested, but not on view of their entry into the country. They cannot be removed without a showing that they have unlawfully come. A process authorizing their removal unless they show a right to stay would not be the process of law that is due. That they are of a class that may be removed had to be shown by showing that they came from some other country; that included showing the country whence they came, and whence they came now. So far as this country is concerned, they had good right to be in Canada; the right of this country will be fully vindicated by their return to that country, where they still have the same right to be. To send them to China would greatly violate their rights. Judgment that appellants are not lawfully entitled to remain in this country, and that they be removed to Canada.